# SCHAFKOPFLAW, LLC
### ATTORNEYS AT LAW

April 12, 2017

U.S. District Court, ED of PA
Office of the Clerk of Court
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

**Re: Kerry and Sheila MacLean v. Borough of Hellertown, Northampton County, Saucon Valley High School, Saucon Valley Middle School, Saucon Valley School District, Eric D. Kahler, Kenneth Napaver, Pamela J. Bernardo, Lori Gamble, Thomas Halcisak & John Does, Initial Complaint**

To Whom It May Concern:

Enclosed please find one (1) original and one (1) copy of Plaintiff's Civil Action Complaint, along with a CD containing a pdf version of same and a check in the amount of $400.00, in regards to the above captioned matter.

Kindly file the original Complaint and return a time-stamped copy to the undersigned along with the Civil Action Summonses.

Sincerely,

Gary Schafkopf, Esq.

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _1810 Meadow Ridge Ct. Bethlehem, PA 18015_

Address of Defendant: _685 Main Street, Hellertown, PA 18055_

Place of Accident, Incident or Transaction: _Northampton County in Pennsylvania_
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes□   No☒

Does this case involve multidistrict litigation possibilities?   Yes□   No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes□   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes□   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes□   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes□   No☒

CIVIL: (Place ✔ **in** ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. □ Indemnity Contract, Marine Contract, and All Other Contracts
2. □ FELA
3. □ Jones Act-Personal Injury
4. □ Antitrust
5. □ Patent
6. □ Labor-Management Relations
7. ☒ Civil Rights
8. □ Habeas Corpus
9. □ Securities Act(s) Cases
10. □ Social Security Review Cases
11. □ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. □ Insurance Contract and Other Contracts
2. □ Airplane Personal Injury
3. □ Assault, Defamation
4. □ Marine Personal Injury
5. □ Motor Vehicle Personal Injury
6. □ Other Personal Injury (Please specify)
7. □ Products Liability
8. □ Products Liability — Asbestos
9. □ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:

□ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

□ Relief other than monetary damages is sought.

DATE: _____   _____   _____
                    Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _4-19-17_   _[signature] Gary Schafly_   _83362_
                   Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Kerry and Sheila MacLean | : | CIVIL ACTION |
| v. | : | |
| | : | |
| Borough of Hellertown, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (✓)


| 4/12/2017 | Gary Schafkopf, Esq | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-664-5200  Ext-104 | 888-283-1334 | gary@schaflaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |


(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Kerry and Sheila MacLean

**DEFENDANTS**
Borough of Hellertown, Northampton County, Saucon Valley High school, Saucon Valley School district, Saucon Valley Middle School, Eric Kahler, Kenneth Napaver, Pamela Bernardo, Lori Gamble, et al.

**(b)** County of Residence of First Listed Plaintiff    United States Of America
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    United states of America
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gary Schafkopf, Esq; Schafkopflaw LLC; 11 Bala Ave, Bala Cynwyd PA 19004; 610-664-5200; Matthew Weisberg, Esq; Wesiberg Law; 7 S. Morton Ave, Morton PA,19070; 610-690-0801

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |     Liability    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment   & Enforcement of Judgment | ☐ 320 Assault, Libel &     Slander      Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted    Student Loans |     Liability    ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
|    (Excludes Veterans) | ☐ 340 Marine      Injury Product ☐ 345 Marine Product      Liability | | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment    of Veteran's Benefits |     Liability    **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending     Product Liability |     Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise |     Injury       Property Damage | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -    ☐ 385 Property Damage |     Leave Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** |     Medical Malpractice     Product Liability | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☒ 440 Other Civil Rights    **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 442 Employment    ☐ 510 Motions to Vacate       Sentence | | | |
| ☐ 245 Tort Product Liability | ☐ 443 Housing/     Accommodations    ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |     Employment    **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other     Other    ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee -       Conditions of       Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding    ☐ 2  Removed from State Court    ☐ 3  Remanded from Appellate Court    ☐ 4  Reinstated or Reopened    ☐ 5  Transferred from Another District *(specify)*    ☐ 6  Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1331
Brief description of cause:
Plaintiff was discriminated based on their race

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  4-12-17

SIGNATURE OF ATTORNEY OF RECORD
*Gary Schafkopf*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.  Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553   Brief Description: Unauthorized reception of cable service

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

WEISBERG LAW
Matthew B. Weisberg, Attorney ID No. 85570
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
**Attorney for Plaintiffs**

Schafkopf Law, LLC
Gary Schafkopf, Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-283-1334
**Attorney for Plaintiffs**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KERRY AND SHEILA MACLEAN, INDIVIDUALLY and HUSBAND & WIFE and as P/N/G of J. L. M. and E. M. 1810 Meadow Ridge Ct. Bethlehem, PA  18015 | : : : : : No. _____ : : : |
| Plaintiffs, | : JURY TRIAL DEMANDED : |
| v. | : |
| BOROUGH OF HELLERTOWN 685 Main Street Hellertown, PA 18055 | : : : |
| and | : : |
| NORTHAMPTON COUNTY 669 Washington St, Easton, PA 18042 | : : : : |
| and | : : |
| SAUCON VALLEY HIGH SCHOOL 2100 Polk Valley Rd. Hellertown, PA 18055 | : : : : |
| and | : : |
| SAUCON VALLEY SCHOOL DISTRICT 2097 Polk Valley Rd, | : : : |

Hellertown, PA 18055

and

SAUCON VALLEY
MIDDLE SCHOOL
2095 Polk Valley Rd,
Hellertown, PA 18055

and

ERIC D. KAHLER
Individually and as Principal
of Saucon Valley
High School
2100 Polk Valley Rd.
Hellertown, PA 18055

and

KENNETH NAPAVER
Individually and as Principal
of Saucon Valley
High School
2100 Polk Valley Rd.
Hellertown, PA 18055

and

PAMELA J. BERNARDO
Individually and as Principal
at Saucon Valley
Middle School
2095 Polk Valley Rd,
Hellertown, PA 18055

and

LORI GAMBLE
Individually and as
Assistant Principal at Saucon
Valley High School
2100 Polk Valley Rd.
Hellertown, PA 18055

and

THOMAS HALCISAK                          :
Individually and as                      :
Assistant Principal at Saucon            :
Valley Middle School                     :
2100 Polk Valley Rd.                     :
Hellertown, PA 18055                     :
                                         :
and                                      :
                                         :
JOHN DOES 1-10                           :
                        Defendants.      :

## CIVIL ACTION COMPLAINT

## PARTIES

1. Plaintiffs, Kerry and Sheila MacLean, individually and as Husband and Wife, are the Parents and Natural Guardians of Plaintiffs, J. L. M. and E. M. currently residing at the above address.

2. Defendant, Borough of Hellertown, is an administrative district agency located in the above address.

3. Defendant, Northampton County, is the responsible party administrator overseeing the police department found in its county.

4. Defendant, Saucon Valley High School, is a high school within the SVSD located in the Borough of Hellertown.

5. Defendant, Saucon Valley School District, ("SVSD") with its headquarters located at 2097 Polk Valley Rd, Hellertown, PA 18055, is a local agency and subdivision of the Borough of Hellertown, acting under color of state law.

6. Defendant, Saucon Valley Middle School, is a middle school within the SVSD located in the Borough of Hellertown.

7. Defendant, Eric D. Kahler, is an adult individual, who was the Principal at the Saucon Valley High School and resigned at the start of the 2016-17 School Year and is being sued in his official and individual capacities.

8. Defendant, Kenneth Napaver, is an adult individual, who is the Principal at the Saucon Valley High School since start of the 2016-17 School Year and is being sued in his official and individual capacities.

9. Defendant, Pamela J. Bernardo, is an adult individual, who at all times relevant and material to the issues in this case is the Principal of Saucon Valley Middle School, and is been sued in his official and individual capacities.

10. Defendant, Lori Gamble, is an adult individual, who at all times relevant and material to the issues in this case is the Assistant Principal at Saucon Valley High School, and is being sued in his official and individual capacities.

11. Defendant, Thomas Halcisak, is an adult individual, who at all times relevant and material to the issues in this case is the Assistant Principal at Saucon Valley Middle School, and is being sued in his official and individual capacities.

12. Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred there from. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below, upon information and belief, Defendants, John Does, were agents, servants, workmen, or employees of Co-Defendants, liable to Plaintiffs hereunder.

## JURISDICTION AND VENUE

13. Jurisdiction in this Honorable Court is based on a violation of federal law conferred by 28

U.S.C. §1331.

14. Plaintiffs, Kerry and Sheila MacLean, individually and as husband and wife are the parents and natural guardians of Plaintiffs, J. L. M. and E. M. bring this action for monetary damages, and other appropriate relief to redress the intentional violations of Plaintiffs' civil rights, pursuant to 42 U.S.C. §§1981, 1983, 1985, 1988, Title VI and Title IX of the Civil Rights Act, 42 U.S.C. §2000d et seq. , secured under the laws of the United States and provisions of the laws of the Commonwealth of Pennsylvania, against Saucon Valley School District, and Saucon Valley High School, collectively referred to as Defendants.

15. Plaintiffs' action also arises under the Civil Rights Acts of 1871, as amended, 42 U.S.C. § 1981, 1983, 1985, 1988, Title VI of the Civil Rights Act, 42 U.S.C. §2000d et seq., the Fourth and Fourteenth Amendments to the Constitution of the United States, for race discrimination, and denial of equal protection on the basis of race.

16. Venue lies in this district in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principal place of business, and/or does business here, and/or the property which is the subject of this action is situated within this district.

## OPERATIVE FACTS

17. All of the acts alleged to have been done or not to have been done by the defendants were done or not done by the defendants, their agents, servants, workmen and/or employees acting within the course and scope of their employment and authority for and on behalf of said defendant.

18. Plaintiffs, J. L. M. and E. M. are minors residing in Lower Saucon Township, Pennsylvania with their parents, Kerry and Sheila MacLean since November 2013.

19. Plaintiff, J. L. M. attends Saucon Valley High School; and Plaintiff, E. M. attends Saucon Valley Middle School.

20. Since moving to Lower Saucon Township J. L. M. and E. M. have experienced extensive and pervasive racism at Saucon Valley High School and Saucon Valley Middle School.

21. Plaintiff, J. L. M. has been the victim of verbal abuse and threats of physical violence since he began attending Saucon Valley Middle School and now at Saucon Valley High School.

22. Plaintiff, E. M. has been the victim of verbal abuse and threats of physical violence since he began attending Saucon Valley Middle School.

23. Plaintiffs, J. L. M. and E. M. have been called names such as "coon," "nigger," and "jungle bunny".

24. Plaintiffs, J. L. M. and E. M. have been challenged to fights while at school and have been physically shoved in the hallways.

25. Plaintiff, J. L. M. has been threatened by students at and after school and, while walking home and on several occasions, has been assaulted.

26. In early 2014, Plaintiff, J. L. M. attended the middle school dance.

27. Prior to the event, he had told his parents that another student, J. W. wanted to fight him because of the color of his skin.

28. At the dance, J. L. M. texted his father, Kerry MacLean several times that J. W. was challenging him to a fight and wanted to go to Dimmick Park to fight (so they would not be caught fighting in school).

29. Plaintiff, Kerry MacLean drove to the dance and spoke directly to Defendant, assistant principal, Thomas Halcisak about the incident.  Mr. Halcisak located both boys and pulled them into an office and made the boys shake hands and call a truce, but failed to address the

ongoing threats made toward J. L. M.

30. On May 16, 2014, at the Saucon Valley Middle School Cafeteria, Plaintiff, J. L. M. was approached by a cafeteria worker and asked to turn out his pockets. The worker then proceeded to "pat down" J. L. M.'s pockets, physically touching J. L. M. without his permission.

31. When Plaintiff, J. L. M. questioned the basis of the search, he was told that someone had allegedly seen him steal something and place it in his pocket.

32. It was later discovered that another student ("A. V.") had accused J. L. M. of stealing and told the worker. EXHIBIT A.

33. Prior to this incident, Plaintiff, J. L. M. had repeatedly related several incidences with the other student A. V. indicating that the two do not get along with Plaintiff, J. L. M. stating that A. V. had repeatedly used racial epithets in their conversations.

34. On or about March 3, 2015 Plaintiff, E. M. had reported to teachers and his parents for several days that another (male) students, E. W. was inappropriately touching and rubbing up against him, and making inappropriate sexual comments.

35. E. W. refused to stop in spite of Plaintiff, E. M.'s repeated requests to do so. To protect himself from being assaulted again, Plaintiff, E. M. punched E, W. in self-defense but was punished by school officials. EXHIBIT B

36. On April 22, 2015, Plaintiff, E. M. received multiple text messages from a friend H.'s phone. Apparently, an individual named "T." had taken H.'s phone while they were at Rite-Aid and sent several messages calling Plaintiff, E. M. several derogatory names.

37. As various incidences kept occurring involving threats and racial epithets, Plaintiffs, Kerry and Sheila MacLean sent an email on April 22, 2015 detailing their concerns to the school

administration, and a meeting was arranged on Thursday, April 30, 2015 at 12:30 pm in the Middle School Conference Room.

38. Defendants, Eric Kahler, Lori Gamble on behalf of Saucon Valley High School and Thomas Halcisak on behalf of Saucon Valley Middle School attended the meeting.  Defendant, Pamela Bernardo was also supposed to attend, but was unable to attend due to other events.

39. During the meeting, Plaintiffs' concerns were discussed in detail and acknowledged by the administration.

40. Plaintiffs expressed a strong desire to partner with the school to help in any way they could, including serving as a contact point for other parents.

41. Several suggestions were also discussed in the meeting, including the introduction of the "Aevidum" program as well as another upcoming school assembly that, while geared towards addressing bullying and the LGBT concerns in the school, could easily be expanded to include racism and intolerance.

42. Plaintiffs left the meeting feeling encouraged, and there was an initial exchange of emails, but no effort was made by school officials to address the ongoing racial issues. EXHIBIT C.

43. On or about October 14, 2016, J. L. M. was provoked by another student, G. H.'s racist behavior and punched him in his head. J. L. M. was charged with simple assault on October 29, 2016. Plaintiff, J. L. M. and G. H. were suspended from Saucon Valley High School. EXHIBIT D.

44. Plaintiff, J. L. M. was not convicted and his record will be expunged by November, 2017.

45. A recent attempt by Dr. Monica McHale-Small, Superintendent, to limit the display of the Confederate flag on school property is being met with resistance by the school board.

46. When Plaintiff, J. L. M. was in 9th grade, a group of students who identify themselves as

"rednecks" approached him one morning as Plaintiff was entering the school and threw or draped a confederate flag around his shoulders. The student who placed the flag on Plaintiff told Plaintiff, J. L. M. to "wear it with pride". Plaintiff, J. L. M. threw the flag to the ground and walked off, but was very intimidated. These students were rumored to wear steel-toed boots and carry knives. The one who put the flag on Plaintiff, J. L. M. was also considerably larger.

47. This same group of students regularly drove pickup trucks to school, flying the confederate flag out of the back of their trucks. These were large flags, maybe 3' x 5' or a bit smaller. These students also displayed the emblem on belt buckles and generally seemed to use it as a way to intimidate Plaintiffs, J. L. M. and E. M.

48. Since students are allowed to wear and promote the symbol in school, it has led to its display at off campus events like a bonfire pep-rally.

49. Recently, a father was seen picking up his son from the high school driving a pickup truck with a confederate flag flying out of the bed of the truck, as described above. This caused a protest by several parents (not including Plaintiffs).

50. At the March 28, 2017 school board meeting, Dr. McHale-Small was presenting the draft proposal resulting from the school's Inclusion Committee. This proposal detailed plans for equity and training to help address the issues in the school, and includes a proposal to limit display of the confederate flag and other symbols associated with hate, such as the swastika.

51. Dr. McHale-Small requested that Plaintiffs, Sheila and Kerry MacLean (Sheila is a member of the Inclusion Committee) be there to provide support, and to get as many people as they could to come as well. During the meeting, Plaintiff, Kerry spoke to ask the board

to not let Dr. McHale-Small's efforts end after her retirement this June. Plaintiff, Kerry MacLean had planned on saying something about the Confederate flag, but other parents who spoke ahead of Plaintiff did a much better job, so Plaintiff acknowledged what they said. After Plaintiff, Kerry MacLean spoke (and someone after him) one of the board members, Ed Ingrhim, spoke in defense of the first amendment, as covered by the Saucon Source. EXHIBIT E.

"Board member Ed Inghrim told parents Kerry and Sheila MacLean that if their family—which includes two sons, in high school and middle school, respectively—"can't handle this day-to-day bigotry, then it's your problem."

Inghrim said he traces his lineage back to an ancestor who traveled to America in the early 1600s on the Mayflower, and said it is not the government's responsibility to tell people "what they can say and what they cannot say."

"I would suggest that what you say to your kids is, 'hang in there and deal with it,'" Inghrim said."

52. In the afternoon on March 30, 2017, Plaintiff, Kerry MacLean left the house to go for a run, and saw a car from the local TV news (WFMZ, Ch 69) parked in front of his home. Plaintiff, Kerry MacLean approached and asked if he could help them and it turned out that they were looking for the Plaintiffs specifically to address Mr. Inghrim's remarks. Rather than risk mis-characterization (as the school board meeting was recorded), Plaintiffs, Kerry and Sheila MacLean gave them an interview. EXHIBIT F.

53. Defendants failed to take any disciplinary action against the students that subjected J. L. M. and E. M. to racial harassment and have instead punished the Plaintiffs' for their actions.

54. Defendants knew or should have known the depth of the verbal and physical abuse suffered

by J. L. M. and E. M., and failed to take any appropriate actions to protect them and/or to remedy the situation.

55. As a direct and proximate result of the acts of the Defendants, Plaintiffs sustained various physical injuries and suffered and will suffer severe mental and emotional distress.

56. The conduct of the Defendants, was intentional, oppressive, malicious and/or in wanton disregard of the rights and feelings of Plaintiffs, and constitute despicable conduct, and by reason thereof, Plaintiffs demand exemplary and/or punitive damages against the Defendants in an amount appropriate to punish or make an example of them.

57. Defendants' ratification of conduct and failure to respond to notification of the abuse and/or to stop such abuse and/or to stop such abuse despite their duty to do so, as hereinafter more fully set forth, created an intimidating, hostile, offensive and abusive school environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, et seq.

## COUNT I
## TITLE VI OF CIVIL RIGHTS ACT VIOLATIONS
## RACE DISCRIMINATION

58. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

59. Defendants Saucon Valley School District, Saucon Valley Middle School and Saucon Valley High School at all times relevant to this action received Federal financial assistance.

60. The acts and conduct of Defendants as stated above where Plaintiffs, E. M. and J. L. M. MacLean were subjected to race discrimination, racial harassment and hostile educational environment because of their race, were violations of the Civil Rights Act, 42 U.S.C. §2000d, et seq.

61. As a direct and proximate result of the said discriminatory practices of the Defendants, Plaintiffs, E. M. and J. L. M. have sustained severe monetary damages, compensatory damages, as well as mental anguish, emotional distress, humiliation, and damages to

reputation.

## COUNT II
## TITLE IX VIOLATIONS

62. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

63. The acts and conduct of Defendants as stated above where Plaintiff, E. M. was subjected to race discrimination and hostile educational environment because of his race were violations of Title IX of the Education Amendment of 1972.

64. As a direct and proximate result of the said discriminatory practices of the Defendants, Plaintiff, E. M. has sustained severe monetary damages, compensatory damages, as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT III
## SECTION 1981 VIOLATION - RACE DISCRIMINATION

65. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

66. The acts and conducts of the individual Defendants as stated above where Plaintiffs E. M. and J. L. M. were subjected to discriminatory practices because of their race by Defendants were violations of the Civil Rights Act, 42 U.S.C. §1981.

67. As a direct and proximate result of said violations of Plaintiffs, E. M. and J. L. M.'s civil rights, Plaintiffs have sustained monetary damages, compensatory damages, as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT V
## SECTION 1983 VIOLATION

68. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

69. Defendants violated E. M. and J. L. M.'s Constitutional rights under the Equal Protection Clause by denying their equal protection because of their race.

70. Defendants violated E. M. and J. L. M.'s Fourteenth Amendment rights when Defendants deprived them of liberty and property rights while Defendants were acting under the color of state law.

71. Defendants violated E. M. and J. L. M. rights under the Civil Rights Act, 42 USC Section 1981, by discriminating against E. M. and J. L. M. because of their race, while acting under color of state law.

72. Defendants were deliberately indifferent to the violations of E. M. and J. L. M.'s Constitutional rights and rights under several federal statutes.

73. The acts and conducts of the Defendants as stated above are violations of the Civil Rights Act 42 U.S.C. Section 1983.

74. In doing each and all of the acts alleged herein, all Defendants were acting under color of State law.

75. All Defendants had a duty to provide and ensure an educational environment for the minor Plaintiffs, E. M. and J. L. M., free of physical assault, intimidation and harassment and to enforce the regulations, rules and laws necessary to protect the minor Plaintiffs, E. M. and J. L. M., from the acts of abuse.

76. All Defendants by their conduct alleged herein intentionally, willfully and without justification did deprive the minor Plaintiffs, E. M. and J. L. M., on grounds of their sex, of their rights, privileges and immunities secured to them by the Constitution and the laws of the United States, including but not limited to, their rights to equal protection of law as provided by the Fourteenth Amendment of the Constitution, and their right to privacy as protected by the Fourth, Fifth and Ninth and Fourteenth Amendments of the Constitution in violation of 42 U.S.C. §1983.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

78. The actions of the Defendant, were designed to emotionally harm Plaintiffs by overwhelming them in a relationship both emotionally and physically that they were incapable of handling as a result of their tender years.

79. The conduct of Defendants were intentional, oppressive, malicious and/or in wanton disregard of the rights and feelings of Plaintiffs and constitutes despicable conduct, and by reason thereof Plaintiffs demands exemplary or punitive damages against Defendants in an amount appropriate to punish them and to deter them and others from such conduct in the future.
COUNT

## COUNT VII
## VIOLATION OF CONSTITUTIONAL RIGHT TO BODILY INTEGRITY

80. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

81. At all times relevant hereto, the Defendants either in or at the supervision, direction, approval, acceptance, and ratification of, or in concert with, the conduct and activities of the Defendants, and in regard to the safety of students within Saucon Valley School district, were responsible for medical care, social services, and associated treatment of said students, as well as the implementation and enforcement of the Disciplinary Responses and Procedures at Saucon Valley School district.

82. The malicious actions of the Defendants were undertaken in bad faith, in deliberate indifference to, and in callous disregard of Plaintiffs' Constitutional Right to Bodily Integrity under the Due Process Clause of the Fourteenth Amendment of the United States Constitution

and Article I, § 1 of the Constitution of the Commonwealth of Pennsylvania, and under 42
U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, in that these Defendants:

a) in deliberate indifference to, and in callous disregard of Plaintiffs'
constitutional right to bodily integrity and concealed violent by Saucon
Valley School District's students, which was certain to result in the additional
and aggravated indecent assault of Plaintiff, J. L. M., that occurred on
October 14, 2016;

b) intentionally veiled and failed to notify, apprise, and/or report to the County of
Northampton Police Department, or any other law enforcement agency, the
repeated incidents of assaults committed by Saucon Valley School District's
students;

c) intentionally and recklessly failed to: (i) memorialize, file, and/or report the
accurate number of violent incidents to the Pennsylvania Department of
Education, as listed in the Annual Report of School Violence and Weapons
Possession regarding repeated acts of violence against other innocent Saucon
Valley Middle School and Saucon Valley High School's students such as
Plaintiff;

d) intentionally and recklessly failed to notify, apprise, or report to school
authorities or to the County of Northampton Police Department, the repeated
incidents of violence and by students within the Saucon Valley School District;

e) recklessly allowed and fostered, in deliberate indifference to and callous
disregard for students' Constitutional Rights to Bodily Integrity under the
Due Process Clause of the Fourteenth Amendment of the United States

Constitution and under Article I of the Pennsylvania Constitution, an environment of unabated violence that continued in certain problematic schools within Saucon Valley School District, including Saucon Valley High School and Saucon Vally Middle School;

    f)   failed to adequately train and supervise its administrators and employees operating the daily affairs of the Saucon Valley School District, namely the individual Defendants named herein, thereby causing the constitutional violations of Plaintiffs' rights as referenced above;

83.  All of the aforesaid acts and knowledge of the acts of the other Defendants, caused, directed, approved, and ratified the aforesaid acts which constitute violations of Plaintiffs' Constitutional Rights.

84.  As a direct and proximate result of the Defendants' conduct herein, Plaintiffs, have suffered and will in the future suffer great mental anguish, shame, terror, embarrassment, humiliation, and physical pain, has incurred and will in the future incur substantial medical, psychological, and hospital expenses for care and treatment; has been prevented in the past and will in the future be prevented from attending to their usual and customary duties, activities, and avocations, all to their great detriment and loss.

85.  As a direct and proximate result of the Defendants' conduct herein, all Plaintiffs have been unable to pursue and enjoy the usual activities of the life of individuals of the Plaintiffs' respective ages, and have suffered a great loss of enjoyment of life, loss of life expectancy, loss of happiness and loss of the pleasures of life, all of which have been to their great, collective detriment and loss.

86.   As a direct and proximate result of the Defendants' conduct herein, all Plaintiffs have suffered great mental anguish, shame, terror, embarrassment, humiliation, and/or physical pain up to the date of the filing of this Complaint, all of which have been to their great, collective financial loss.

## COUNT VIII
## VIOLATION OF CONSTITUTIONAL RIGHT TO EQUAL PROTECTION
## RACIAL DISCRIMINATION

87. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

88. The malicious, conspiratorial actions of the Defendants were undertaken in bad faith, in deliberate indifference to, and in callous disregard of Plaintiff's Constitutional Right to Equal Protection under the Fourteenth Amendment of the United States Constitution, and under Article I, § 1 and § 26 of the Constitution of the Commonwealth of Pennsylvania, and under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, through which Defendants exhibited racially discriminatory intent and whereby the unwritten policy, practice, or custom, of the Defendants selectively denying and/or depriving students attending predominantly minority-populated schools within Saucon Valley School District, including Saucon Valley Middle School and Saucon Valley High School and in particular, minority Plaintiffs, of equivalent levels of protective services, policies, and procedures actually afforded similarly situated students attending certain, predominantly or significantly, Caucasian-populated schools within Saucon Valley School District.

89. As a direct and proximate result of the Defendants' conduct herein, all Plaintiffs have suffered great mental anguish, shame, terror, embarrassment, humiliation, and/or physical pain up to the date of the filing of this Complaint, all of which have been to their great, collective financial loss.

## COUNT IX
## WILLFUL MISCONDUCT CONSTITUTING INTENTIONAL, DISCRIMINATORY FAILURE TO PROVIDE ADEQUATE OR EQUIVALENT LEVELS OF PROTECTIVE SERVICES, PROCEDURES, AND POLICIES

90.    Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

91.    This Court has supplemental jurisdiction over this claim for relief of the Plaintiff pursuant to 28 U.S.C. § 1367.

92.    At all times material hereto, the individual Defendants acted in course and scope of their employment within Saucon Valley School District, under color of state law, and either in or at the supervision, direction, approval, acceptance, and ratification of, or in concert with the conduct and activities of the Defendants named herein, and in regard to the safety of students within the Saucon Valley Middle School and Saucon Valley High School were responsible for medical care, social services, and associated treatment of said students, as well as the implementation and enforcement of the Disciplinary Responses and Procedures at the Saucon Valley Middle School and Saucon Valley High School.

93.    The malicious, conspiratorial actions of the individual Defendants as named above were undertaken in bad faith, in deliberate indifference to, and in callous disregard of Plaintiffs' Constitutional Rights guaranteed under the Fourteenth Amendment of the United States Constitution, Article I, § 1 and § 26 of the Constitution of the Commonwealth of Pennsylvania, and under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, as well as in direct violation of federal and state education laws and regulations, in particular the No Child Left Behind Act of 2001, 20 U.S.C. § 6301 *et. seq.*, and Pennsylvania's Safe Schools Act, 24 P.S. § 13-1301 *et seq.*, regarding mandatory required reporting of known violent incidents

occurring on school property, whereby unwritten policy, practice, or custom, Defendants

exhibited willful misconduct in intentionally, recklessly, and discriminatorily failing to

provide an equivalent level of protective services, policies, and procedures to the Saucon

Valley Middle School and Saucon Valley High School students, including Plaintiffs, as

provided for in the Saucon Vallley School Districts' official disciplinary policies, responses,

procedures, code of conduct, and law enforcement reporting protocols and procedures, and as

afforded to students similarly situated at certain other schools within the Saucon Valley

School District,

   **WHEREFORE**, Plaintiffs respectfully requests this Honorable Court enter judgment in

her favor and against Defendants, individually, jointly and/or severally, in an amount in excess of

seventy-five thousand dollars ($75,000), plus such other and further relief as this Honorable Court

deems necessary and just, and to Order the following relief:

   a.  Statutory damages;

   b.  Punitive damages;

   c.  Compensatory damages, including;

        i.  Actual damages for financial and physical injuries, including but not

            limited to emotional distress;

   d.  Attorney's fees, costs, and equitable relief.

Respectfully Submitted,


WEISBERG LAW                                SCHAFKOPF LAW, LLC

BY: */s/: Matthew Weisberg*                 BY: _Amy Schafkopf_
MATTHEW B. WEISBERG, ESQ                    GARY SCHAFKOPF, ESQ.

DATED: 4-10-17                              DATED: 4-10-17

# EXHIBIT A

Jon-Luc's Cafeteria Incident
From: **Kerry MacLean** (kmaclean@texas.net)

Sent: Fri 5/16/14 4:58 PM

To:   Thomas.Halcisak@svpanthers.org (thomas.halcisak@svpanthers.org)

      1 attachment

      V__57A3.png (205.5 KB)

Mr. Halcisak,
This evening we received more information concerning this afternoon's cafeteria incident.  Hopefully you have not had time to call the supervisor of the cafeteria workers.

It appears that some other students tipped the cafeteria workers off that they saw ████ putting something in his pocket.  I have attached a copy of a screen shot from ████s phone showing the text message that was exchanged with ████ providing this information.  The student with whom ████ was texting is named ████.

I am somewhat gladdened that the workers did not approach ████ without cause, although it does sadden me further that this appears to have been caused by his peers.

Thank you very much for your time on this, and we do look forward to continued discussion on the general issue that was raised tonight.

Sincerely,
Kerry & Sheila MacLean

Attached photo of text message (████████):



& okay

And why would Savannah tell on me anyways I don't talk to her so I haven't done anything to her

Just admit it was you and be done with it

Listen it wasn't me. Idgaf you do. Let it be

I told the lunch lady you stole because people though you put something in your pocket

So it was you?

Kay thanks

Type a message...

# EXHIBIT B

 Cafeteria Fight

Fight

From: ██ **MacLean** ████████████@gmail.com)

Sent: Tue 3/03/15 4:10 PM

To:   Kerry MacLean (kmaclean@texas.net)

Hi, I'm ████████ and I got into a fight today with ████████ (6th grade). Here is a play-by-play of the fight. It all started yesterday, the 2nd. I was in Health class with Mr. Jost and he wouldn't get out of my personal space and he kept touching me. I quickly informed Mr. Jost and he said he will keep an eye out. ████████ persisted on with touching and coming EXTREMLY close to me. Then, the period endend and we went home. The next day, after health class when we were packing up, he started in my book, sexually rubbing and stroking my shoulders. I swiftly tried to get Ms. Werts, but I couldn't reach her without him doing it again. I have witnesses that saw me walk away from him, avoiding a fight. I sat down back at my seat, thinking it was all over. He went to his seat, I went to mine. He started getting near me and I warned I WILL punch him if he did it again. Well, he tested me, so I shoved him into the into the wall and punched him multiple time in the face. He got up after being knocked out for a couple seconds and went to the corner and cried.

I am willing to face the consequences of my actions even if its detetnion,ISS, Suspension. i don't belive this act deserves expulsion. I was defending myself.

Regards,

████████

# EXHIBIT C

Re: Racism and Intolerance at Saucon Valley Schools
From: **Eric Kahler** (eric.kahler@svpanthers.org)

Sent: Fri 5/01/15 1:42 PM

To:    Ethan MacLean (kmaclean@texas.net)

Cc:    thomas.halcisak@svpanthers.org (thomas.halcisak@svpanthers.org);
Lorie.Gamble@svpanthers.org (lorie.gamble@svpanthers.org); pamela.bernardo@svpanthers.org
(pamela.bernardo@svpanthers.org); Sheila MacLean (sheilae@texas.net);
rachel.alderfer@svpanthers.org (rachel.alderfer@svpanthers.org)

Thank you for your kind words.  We look forward to working with you.


Have a great weekend,


Eric



Eric D. Kahler, Principal

Saucon Valley High School

2100 Polk Valley Road

Hellertown, PA 18055

610-838-7001


On Fri, May 1, 2015 at 11:10 AM, Kerry MacLean <kmaclean@texas.net> wrote:

All,
Sheila and I wanted to th ank you for yesterday's meeting.  We both feel that it was very productive and
left feeling encouraged that there are steps being taken to address these issues.

Again, we would like to reiterate that if there is anything we can do to assist in the process, please do
not hesitate to reach out.  We are ready and willing participants.

Thanks to you all for caring,
Kerry & Sheila MacLean

From: eric.kahler@svpanthers.org
Date: Wed, 22 Apr 2015 15:40:03 -0400
Subject: Re: Racism and Intolerance at Saucon Valley Schools
To: kmaclean@texas.net
CC: pamela.bernardo@svpanthers.org; sheilae@texas.net; rachel.alderfer@svpanthers.org

Mr. MacLean,

Thank you for sharing your concerns both in the email and in our brief conversation this afternoon.  This is to confirm our meeting for Thursday, April 30 at 12:30 in the Middle School Conference Room.

Please let us know if you are not able to attend, and we will attempt to find a more suitable date,

Best Regards,

Eric

Eric D. Kahler, Principal

Saucon Valley High School

2100 Polk Valley Road

Hellertown, PA 18055

610-838-7001

On Wed, Apr 22, 2015 at 11:21 AM, Kerry MacLean <kmaclean@texas.n et> wrote:

Ms. Bernardo and Mr. Kahler,
I am writing this email this morning to address some ongoing concerns that my wife, Sheila, and I have with racial intolerance and ongoing incidents at Saucon Valley, both on and off campus.  I am copying Rachel Alderfer as she knows both of our boys and is familiar with some of the incidents.

My family moved to Lower Saucon a year ago last November from Central Texas.  We are a multi-cultural family - Sheila is black, of Haitian descent, and I am white.  Our oldest son, ███████████, is 15

and a freshman at Saucon. ███████our youngest, is 12 and in the 6th grade.  You may know both boys, but I wanted to "introduce" them to you so that you may have faces with the names.

Since we have moved to the area, both boys have been subjected to harassment on account of t heir race.  They have been called "nigger" quite regularly, in addition to other terms such as "coon" and "jungle bunny" which I have not heard since I was a child.  Some of these incidents have resulted in fights, but mostly they result in angry verbal responses in kind from our boys.  This makes it very difficult for us as parents to raise them with Christian mores (no fighting, cussing, etc) when they are subjected to this type of harassment.  It also makes it difficult for the boys to explore their own cultural heritage openly.

Last year, we had extensive conversations with Mr. Halcisak concerning an early incident.  We also had meetings with several of███████s teachers, some of who expressed amazement that such a thing could be occurring here.  I suggested to Mr. Halcisak at the time that he reach out to parents of minority students to both get to know the families as well as to help determine= the scope of the issue.  We never heard back, but have recently heard from other parents that have moved into the area that their son is experiencing issues having only been here for 3 weeks.

To date, it is my impression that the most that has ever occurred after one of these incidents is a scolding.  Even when teachers or staff have been there to witness an incident.  At the same time, it seems that the school is going out of its way to allow other repressed groups to express themselves.  I have heard from both boys that there is an active LGBT organizations that effectively puts down any intolerant talk or lack of  acceptance of their views.  This is not an attack on that viewpoint/group.  I am trying to point out that some traditional "target" groups appear to be garnering active support whereas others are not.

It is very difficult to keep the boys from growing up angry.  ███████id not want me to send you the text message (image attached) for fear of retaliation.  Both of them often start their day by saying things to the effect if "if I hear such and such from that kid again I'm going to retaliate", etc.

In today's highly charged racial climate, we see police departments and other organizations actively training their members regarding tolerance.  Because it needs to be done.  Scolding a young person for a behavior that is often learned in the home and reinforced by your immediate peers is not going to change the culture.  As adults, people are arrested for the kind of behavior that my boys are experiencing.

Please take some action on this.  Also, please consider this as a formal request to provide Sheila and I with any records (as I know that the boys have had to fill out forms when reporting incidents in the past) that you may have, so that we may pursue our own course as it becomes necessary.

Thank yo u very much,
Kerry MacLean
Sheila MacLean
kmaclean@texas.net

sheilae@texas.net
512-388-2424

Regarding the image below:  there was an incident off campus where another boy (I do not know who)
took the girl Hope's phone to send this text.  He signed the messages "trin" but ▮▮▮▮ says that trin was
not present and had nothing to do with this.  The image was taken as a snapshot from ▮▮▮▮s phone.

This e-mail transmission may contain confidential and legally privileged information that is intended only for the individual named in t he e-mail address. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail message is strictly prohibited. If you have received this e-mail transmission in error, please reply to the sender, so that proper delivery can be arranged, and please delete the message from your mailbox.

This e-mail transmission may contain confidential and legally privileged information that is intended only for the individual named in the e-mail address. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail message is strictly prohibited. If you have received this e-mail transmission in error, please reply to the sender, so that proper delivery can be arranged, and please delete the message from your mailbox. --
001a11c1193aaf7d2b0515099 39b--

RE: Racism and Intolerance at Saucon Valley Schools
From: **Kerry MacLean** (kmaclean@texas.net)

Sent: Mon 5/11/15 12:19 PM

To:   Pamela Bernardo (pamela.bernardo@svpanthers.org); Sheila MacLean (sheilae@texas.net)

Cc:   Eric Kahler (eric.kahler@svpanthers.org); thomas.halcisak@svpanthers.org (thomas.halcisak@svpanthers.org); Lorie.Gamble@svpanthers.org (lorie.gamble@svpanthers.org); rachel.alderfer@svpanthers.org (rachel.alderfer@svpanthers.org)

Ms. Bernardo,

I apologize for taking so long to get back to you.  While not great media hounds, Sheila and I have talked to some folks as well as done some poking around.

First of all, I suggested at our meeting a couple of weeks ago that the media itself is often guilty of some of our misportrayals, and teaching people to look past the images that they see on television or You Tube can be very enlightening.  Is that angry black woman with her mouth open in mid-shout with the fires of the Baltimore riots shown on CNN really representative of the city?  Where is the picture of that same woman hurriedly trying to send her kids off to school before going to work?  We're never going to see that second picture - it doesn't bring ratings.  Unfortunately, that first picture helps inform our impressions and views of people or cities.  These images and clips can be readily found just about anywhere, but they must be accompanied by discussion.

Another source recently pointed out to us the Monica Lewinsky TED talk on Shame (https://www.ted.com/talks/monica_lewinsky_the_price_of_shame). I watched this today at lunch, and while it is not directly about racism it is *extremely* compelling - the first object of cyber-bullying describing her experiences as a young woman who made a simple mistake.  Sheila and I plan to show it to our boys in the context of discussing their use of social media.

Of course movies are also a great source, but you'd have to find clips from them.  I haven't seen these yet, but Denzel Washington in the "Great Debaters" (http://www.imdb.com/title/tt0427309/) came highly recommended, as did Selma (http://www.imdb.com/title/tt1020072/?ref_=nv_sr_1).

Also, Liberty High School in Bethlehem apparently has a program in place where restitution is made as part of the consequences of individual actions (I forget the name of the program).  The goal of the program is to teach empathy for the victim of a crime or abuse, etc., not just to apply corrective action.

Our next door neighbors are proving to be an amazing resource, and we will be working with them to move this issue forward in the community as well as the schools.

We really appreciate your follow-up and will continue to check-in from time to time to see where we can be of use as we move forward with addressing racism and intolerance.

Thank you very much,
Kerry & Sheila MacLean

---

Date: Tue, 5 May 2015 05:43:20 -0400
Subject: Re: Racism and Intolerance at Saucon Valley Schools
From: pamela.bernardo@svpanthers.org
To: kmaclean@texas.net; sheilae@texas.net
CC: eric.kahler@svpanthers.org; thomas.halcisak@svpanthers.org; lorie.gamble@svpanthers.org; rachel.alderfer@svpanthers.org

Good morning,
I am pleased the meeting went well. I am so sorry I was unable to attend (you really did not want my germs!).  Should you have any resources, videos, links, etc., that you would like to share, we have Advisory meetings every 6 days with our students and I am always looking for short clips, articles, etc. to spur conversation and reflection.  As always, do not hesitate to reach out to the counselors, teachers or administration.
Enjoy this beautiful Spring (finally!) weather!


Pamela J. Bernardo
Principal
Saucon Valley Middle School
2095 Polk Valley Road
Hellertown PA  18055
610.838.7001 ext. 3704
pamela.bernardo@svpanthers.org
Blogs to check -

http://saucon1to1.blogspot.com/
http://teachingreaderstothink.blogspot.com/
http://middleschooladvisory.blogspot.com/

Parent Teacher Group Facebook Page –
https://www.facebook.com/groups/134708123329214/

On Fri, May 1, 2015 at 11:10 AM, Kerry MacLean <kmaclean@texas.net> wrote:

All,
Sheila and I wanted to thank you for yesterday's meeting.  We both feel that it was very productive and left feeling encouraged that there are steps being taken to address these issues.

Again, we would like to reiterate that if there is anything we can do to assist in the process, please do not hesitate to reach out.  We are ready and willing participants.

Thanks to you all for caring,
Kerry & Sheila MacLean

---

From: eric.kahler@svpanthers.org
Date: Wed, 22 Apr 2015 15:40:03 -0400
Subject: Re: Racism and Intolerance at Saucon Valley Schools
To: kmaclean@texas.net
CC: pamela.bernardo@svpanthers.org; sheilae@texas.net; rachel.alderfer@svpanthers.org

Mr. MacLean,

Thank you for sharing your concerns both in the email and in our brief conversation this afternoon. This is to confirm our meeting for Thursday, April 30 at 12:30 in the Middle School Conference Room.

Please let us know if you are not able to attend, and we will attempt to find a more suitable date,

Best Regards,

Eric

Eric D. Kahler, Principal

Saucon Valley High School

2100 Polk Valley Road

Hellertown, PA 18055

610-838-7001

On Wed, Apr 22, 2015 at 11:21 AM, Kerry MacLean <kmaclean@texas.net> wrote:

Ms. Bernardo and Mr. Kahler,
I am writing this email this morning to address some ongoing concerns that my wife, Sheila, and I have with racial intolerance and ongoing incidents at Saucon Valley, both on and off campus. I am copying Rachel Alderfer as she knows both of our boys and is familiar with some of the incidents.

# EXHIBIT D

## PRESS RELEASE
## LOWER SAUCON TOWNSHIP POLICE DEPARTMENT

| Nature of Offense | Date | Time | Incident/Accident # |
|---|---|---|---|
| Assault | 10/14/16 | 1805 | 20161014M6685 |

Location
Saucon Valley High School

Persons Involved
Charged: 16 year old juvenile.
Victim: 14 year old juvenile.

*Do not release until initialed by Supervisor )*     Approved by Supervisor
Follow up news release further details surrounding motive for assault.
Investigation revealed the assault was the result of a video made by the 14yr old victim using
profane disparaging, and racists verbal remarks about the 16yr old. The 14yr old then showed the
video to another student who then showed the 16yr old.

**Released To:**  Newspaper          TV/Radio          By: (initials of person forwarding)

## PRESS RELEASE
### LOWER SAUCON TOWNSHIP POLICE DEPARTMENT

| Nature of Offense | Date | Time | Incident/Accident # |
|---|---|---|---|
| Assault | 10/14/16 | 1805 | 20161014M6685 |

Location Saucon Valley High School

Persons Involved

_male_  Charged 16 year old Juvenile  } Both Lower Saucon residents

_male_  Victim  14 year old Juvenile

---

*Do not release until initialed by Supervisor )*        Approved by Supervisor

Incident Information (Give brief summary of what transpired)

Reported 16 year old juvenile at Saucon Valley High School engaged in a fight with a 14 year old juvenile. The 16 year old juvenile was recorded on video repeatedly punching 14 year old juvenile in the head                                        16 year old juvenile is being charged with Simple Assault, Harassment and Disorderly Conduct.

Released To: Newspaper          TV/Radio          By: (initials of person forwarding)

Nov. 9, 2016 10:40AM    Lower Saucon Township PD                              No. 0443   P. 3

**COMMONWEALTH OF PENNSYLVANIA**
**COUNTY OF NORTHAMPTON**

**WRITTEN ALLEGATION**
(Multiple Summaries of Offenses)
In the Interest of:

**Affiant Information**

| | | | |
|---|---|---|---|
| Affiant Name: OFFICER JARED JOHN GUNSHORE | First Name: ▓▓▓ | Middle Name: | Last Name: MACLEAN | Gen. |
| Arresting Agency: LOWER SAUCON TOWNSHIP POL | Address: 1810 MEADOW RIDGE CT | | |
| Address: 3700 OLD PHILADELPHIA PIKE | City/State/Zip: BETHLEHEM, PA 18015 | | |
| City/State/Zip: BETHLEHEM, PA 18015 | Telephone: (512)589-1234 | | |
| Telephone: (610)317-6110 | | | |

**JUVENILE IDENTIFICATION INFORMATION**

| Docket Number | Date Filed | OTN/LiveScan Number | Allegation Number | SID | Request Lab Services? |
|---|---|---|---|---|---|
| | 10/29/2016 | | | | ☐ YES ☒ NO |

| GENDER | DOB 03/04/2000 | Place of Birth | | Add'l DOB | Co-Conspirator(s) ☐ |
|---|---|---|---|---|---|
| ☒ Male | | | | | |
| ☐ Female | AKA | | | | |

| | First Name | Middle Name | Last Name | | Gen. |
|---|---|---|---|---|---|
| RACE | ☐ White | ☐ Asian | ☒ Black | ☐ Native American | ☐ Unknown |
| ETHNICITY | ☐ Hispanic | | ☒ Non-Hispanic | | ☐ Unknown |
| HAIR COLOR | ☐ GRY (Gray) | ☐ RED (Red/Auba) | ☐ SDY (Sandy) | ☐ BLU (Blue) | ☐ PLE (Purple) | ☐ BRO (Brown) | ☐ PNK (Pink) |
| | ☒ BLK (Black) | ☐ ONG (Orange) | ☐ WHI (White) | ☐ XXX (Unk/Bald) | ☐ GRN (Green) | ☐ BLN (Blonde / Strawberry) |
| EYE COLOR | ☐ BLK (Black) ☐ HAZ (Hazel) | ☐ BLU (Blue) ☐ MAR (Maroon) | ☒ BRO (Brown) ☐ PNK (Pink) | ☐ GRN (Green) ☐ MUL (Multicolored) | ☐ GRY (Gray) ☐ XXX (Unknown) |
| Driver License | State | License Number | Expires | | WEIGHT (lbs.) 150 |
| DNA | ☐ YES ☒ NO | DNA Location | | | Ft. HEIGHT In. |
| FBI Number | | HNU Number | | | 5        10 |
| Juvenile Fingerprinted | ☐ YES ☒ NO | Fingerprint Classification | | | |
| Juvenile Photographed | ☐ YES ☒ NO | | | | |

**PARENT / GUARDIAN INFORMATION**

| Mother | | Father | |
|---|---|---|---|
| Name: SHEILA MACLEAN | | Name: KERRY MACLEAN | |
| Address: 1810 MEADOWS RIDGE CT | | Address: 1810 MEADOWS RIDGE CT | |
| City/State/Zip: HELLERTOWN, PA 18055 | | City/State/Zip: HELLERTOWN, PA 18055 | |
| Phone: (512)388-2424   DOB 11/19/1967 | | Phone:   DOB 03/25/1967 | |
| ☐ Deceased   ☐ Address Unknown   ☐ Same Address as Juvenile | | ☐ Deceased   ☐ Address Unknown   ☐ Same Address as Juvenile | |

**Guardian or Nearest Adult Relative (If parents/guardian are unknown)**

| | Relationship to Juvenile |
|---|---|
| Name | Phone |
| Address | ☐ Deceased   ☐ Address Unknown   ☐ Same Address as Juvenile |
| City/State/Zip | |

**ARREST & DETENTION**

| Date of Arrest | 10/14/2016 | Date & Time Admitted to Detention | |
|---|---|---|---|
| Time of Arrest | 21:00 | Location of Detention Facility | |

**APPROVAL OF THE ATTORNEY FOR THE COMMONWEALTH**

| Office of the Attorney for the Commonwealth   ☐ Approved   ☐ Disapproved because: | |
|---|---|
| (The District Attorney may require that the written allegation be approved by an attorney for the Commonwealth prior to submission. See Pa. R.J.C.P. 331.) | |
| Name of Attorney for the Commonwealth | Signature of Attorney for the Commonwealth | Date |

I, **OFFICER JARED JOHN GUNSHORE**                                              108/40568
(Name of the Affiant)                                                          PSP/ORI/CPT – Assigned Affiant ID Number & Badge #

of **LOWER SAUCON TOWNSHIP POLICE DEPARTMENT**                    PA0481700
(Department of Agency Represented and Political Subdivision)                 (Police Agency ORI Number)

1. Do hereby represent that it is in the best interest of the juvenile and the public that proceedings be brought, and that the juvenile is in need of treatment, supervision or rehabilitation.

☒ I accuse the above named Juvenile who lives at the address set forth above

☐ I accuse the Juvenile whose name is unknown to me but who is described as

☐ I accuse the Juvenile whose name and popular designation are unknown to me and whom I have
therefore designated as John Doe or Jane Doe

has committed a delinquent act by violating the penal laws of the Commonwealth of Pennsylvania at

**210**   **LOWER SAUCON TWP**                          in   **NORTHAMPTON**   County
(Statute Code)   (Place – Political Subdivision)

on or about **Friday October 14, 2016 at 1805 hrs.**
(Date, Day and Time)

Nov. 9, 2016 10:41AM    Lower Saucon Township PD                    No. 0443   P. 4

## WRITTEN ALLEGATION

| Docket Number | Date Filed 10/29/2016 | OTN/LiveScan Number | | Allegation Number |
|---|---|---|---|---|

| Juvenile Name | First | | Middle | Last MACLEAN |
|---|---|---|---|---|

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically. (Set forth a brief summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. The age of the victim at the time of the offense may be included if known. In addition, social security numbers and financial information (e.g. PNbr) should not be listed. If the identity of an account must be established, list only the last four digits 204 PA §§ 213.1 - 213.7.)

| Inchoate Offense | ☐ Attempt 18 901 A | | ☐ Solicitation 18 902 A | | ☐ Conspiracy 18 903 | | | |
|---|---|---|---|---|---|---|---|---|

| Lead? | Offense # | Section | Subsection | of the | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| ☒ | 1 | 2701 | A1 | of the | 18 | 1 | M2 | 1399 | 13B |

| PennDOT Data (if applicable) | Accident Number | | | ☐ Safety Zone | | ☐ Work Zone |
|---|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):
SIMPLE ASSAULT – ATTEMPT

Acts of the accused:
SIMPLE ASSAULT The Actor, ▓▓▓, MacLean, on or about, October 14th, 2016, in the County of Northampton, attempted to cause or intentionally, knowingly or recklessly caused bodily injury to, ▓▓▓▓, that is to say the actor, ▓▓▓▓ MacLean, in violation of Section 2701(a)(1) of the Pennsylvania Crimes Code, Act of December 6, 1972, as amended, Pa. C.S. 2701(a)(1)    To Wit: Defendant did repeatedly punch or strike ▓▓▓▓ in the head multiple times.

| Inchoate Offense | ☐ Attempt 18 901 A | | ☐ Solicitation 18 902 A | | ☐ Conspiracy 18 903 | | | |
|---|---|---|---|---|---|---|---|---|

| Lead? | Offense # | Section | Subsection | of the | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | 2 | 5503 | A1 | of the | 18 | 1 | S | 5311 | |

| PennDOT Data (if applicable) | Accident Number | | | ☐ Safety Zone | | ☐ Work Zone |
|---|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):
DISORDERLY CONDUCT ENGAGE IN FIGHTING – SUMMARY

Acts of the accused:
DISORDERLY CONDUCT ENGAGE IN FIGHTING – SUMMARY The Actor, ▓▓▓▓▓, on or about, October 14th, 2016, in the County of Northampton Lower Saucon Township, is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he engages in fighting or threatening, or in violent or tumultuous behavior., that is to say the actor ▓▓▓▓ in violation of Section 5503 (A) (1) of the PennsylvaniaCrimes Code,  as amended, 18 Pa.C.S, 5503 (A) (1) To Wit: Defendant did strike kick or shove victim ▓▓▓▓ while engaging in a fight.

| Inchoate Offense | ☐ Attempt 18 901 A | | ☐ Solicitation 18 902 A | | ☐ Conspiracy 18 903 | | | |
|---|---|---|---|---|---|---|---|---|

| Lead? | Offense # | Section | Subsection | of the | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | 3 | 2709 | A1 | of the | 18 | 1 | S | 5311 | 13B |

| PennDOT Data (if applicable) | Accident Number | | | ☐ Safety Zone | | ☐ Work Zone |
|---|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):
HARASSMENT/STRIKE, SHOVE, KICK, ETC.

Acts of the accused:
HARASSMENT, SHOVE, KICK, ETC, The Actor, ▓▓▓▓ MacLean, on or about, October 14th, 2016, in the County of Northampton, commits the crime of harassment when, with intent to harass, annoy or alarm another, the person; strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same, that is to say the actor, ▓▓▓▓ in violation of Section 2709 (A) (1) of the PennsylvaniaCrimes Code,  as amended, 18 Pa.C.S, 2709 (A) (1)

Nov. 9, 2016 10:41AM    Lower Saucon Township PD                              No. 0441   P. 6

## WRITTEN ALLEGATION

| Docket Number | Date Filed 10/29/2016 | OTN/LiveScan Number | Allegation Number |
| --- | --- | --- | --- |
| Juvenile Name | First | Middle | Last MACLEAN |

### AFFIDAVIT of PROBABLE CAUSE

1: Your affiant being a duly sworn officer in the Commonwealth of Pennsylvania was requested to take an assault report at headquarters on October 14th ,2016.002: Victim _____ Juvenile and his adult parents state _____ caused bodily injury ( _____ 003: Victim reports _____ repeatedly punched victim in his head and kicked him in the ribs.004: As a result _____ actions victim was admitted to medical care for a concussion and other related injuries due to the assault. 005: Your affiant requests a warrant issued for the arrest of _____

I verify that the facts set forth in this affidavit are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of section 4904 of the Crimes Code (18 PA C.C, 4904) relating to unsworn falsification to authorities.

**OFFICER JARED JOHN GUNSHORE**
Affiant Name                          Affiant Signature                          Date 10/20/16

Chad Shirk's Statement: ▮

After the pep rally concluded, I was walking around on the gym floor and noticed a crowd of students in a circle. I went over to them, and noticed the end of two students that appeared to be in an altercation. I then separated the students ▮ and ▮▮▮▮ then left my sight and I began talking to ▮▮▮▮ I noticed he was very upset and he was yelling things at people. I escorted ▮▮▮ to the side of the gym where he was separated from the student body. He, alongside of his girlfriend began to tell me what happened and why the fight started. He stated that he was informed that someone posted a video of him eating wings and used a racial slur during the video. He informed me that his friends were telling him about it. I asked him if he had the video and he said no. ▮▮▮▮ was still very upset and I did not feel comfortable leaving him alone and being around other students at that time. I asked him if I could have his phone and I escorted him and his girlfriend to the office. While at the office, Mrs. Werkelser had them sit down in the nurse's office while I tried to contact Mr. Napaver or Mr. Frey. I was able to get ahold of Mr. Frey and I met him outside of the high school doors outside of the science wing and informed him of what was going on. He walked back with me and we took ▮▮▮ and his girlfriend in the room across from Mrs. French's office. During that time, Mr. Frey and I asked questions and tried to understand what happened and who was involved. During this time ▮▮▮▮ name was brought up. I asked Mr. Frey if he wanted me to walk around the school to see if I could find ▮▮▮▮ I was informed she was in Mrs. Maynard's room. I went into the room and Gavin was in there with her and Mrs. Barona. ▮▮▮ was very upset at the time and he had shared some information with the two teachers and the teachers gave me a paper with two names on it. One of those names was ▮▮▮▮▮▮▮▮ I believe ▮▮▮ said that ▮▮▮▮▮▮▮ had the video on his phone. While walking back to the office, I noticed a student that fit the description of the student and asked a couple of students that were sitting in the hall what the student's name was. They informed me it was ▮▮▮▮▮ I then approached ▮▮▮▮▮ and asked him if he could come with me to the office and we went immediately to the office. After informing Mr. Frey and Mr. Napaver that I had located the student that was said to have the video, I took ▮▮▮▮ into Mr. Napaver's office and asked to complete the witness statement document. He was reluctant to complete the information and I informed him that we were just trying to find out what truly happened and that we wanted to make sure we had all of the information we could. During this time, he made me aware of other incidents where he felt that racial slurs and comments were being made about him and other students. I also asked him to record those on a separate witness statement.

# EXHIBIT E

**Saucon Source** (https://sauconsource.com/2017/03/29/school-board-member-parents-complained-bigotry-problem/)

# School Board Member to Parents Who Complained of Bigotry: 'It's Your Problem'

By: __JOSH POPICHAK__ | March 29, 2017



(javascript:void(0))

A Saucon Valley School Board member's comments to parents who say their minority children have been bullied by white students in Saucon schools for years stunned many audience members at the board's meeting Tuesday night.

Board member Ed Inghrim told parents Kerry and Sheila MacLean that if their family–which includes two sons, in high school and middle school, respectively–"can't handle this day-to-day bigotry, then it's your problem."

Inghrim said he traces his lineage back to an ancestor who traveled to America in the early 1600s on the *Mayflower*, and said it is not the government's responsibility to tell people "what they can say and what they cannot say."

"I would suggest that what you say to your kids is, 'hang in there and deal with it,'" Inghrim said.



(javascript:void(0))

**876**
Shares

His remark was met with audible gasps from the audience, which included a number of African-American parents of students in the district.

Gary MacLean, countered Inghrim's personal anecdote about his roots by sharing information about his own family background, which he said includes ancestors who immigrated to America in the Colonial era, war heroes and those who made the ultimate sacrifice to defend the United States.

His wife, on the other hand, is a first-generation immigrant.

"It doesn't matter when you immigrated," he said, adding that every American has the right to pursue life, liberty and happiness, as outlined in the Declaration of Independence.

"You hold on to your attitudes, and we'll see about it at the next election," he told Inghrim, who is not seeking re-election this year after serving for three terms on the board.

"Free speech is not illegal!" Inghrim told McLean, who responded, "harassment is," as he took his seat.

Sheila MacLean told the board her sons have gone to school every day for nearly four years never knowing whether they will be called words like the "n-word," "porch monkey or jigaboo."

"Is that fair to them?" she asked the board. "Our children are depending on us to protect them."

Sheila MacLean admonished Inghrim, asking him what he would do if he were a target for bullies every day.

Referring to another incident, in which a Confederate flag was thrown on a student, she said, "with all due respect, someone flying the Confederate flag, with their right, is not worth my children's lives."



*Parent Sheila MacLean speaks at the Saucon Valley School Board meeting on Tuesday, March 28, 2017.*

"What you said tonight was very hurtful," parent Al Rivers next told Inghrim.

"I hope you comprehend the flag does demonstrate hatred when it's used in an inappropriate way," he said. "Things change over time. ... I'm praying for you."

During a meeting which also included the presentation of a draft equity plan that school officials hope will help promote tolerance in Saucon Valley schools, if recommendations such as a ban on displays of the Confederate flag are approved, Supt. Monica McHale-Small also spoke out about the racism she has encountered during her tenure in the district.

"We really need some strong statements as a district," she said, making one herself when she called the Confederate flag "a symbol of hate."

"I'm going to be very honest and people might not like to hear this, but I've never heard the 'n-word' being used so much in a school district in my 27 years as when I came here, and I'd never seen the Confederate flag in–on school grounds and on students in school until I came here. It's not something I'm used to seeing and it's not something that happens in all schools. It just *doesn't*," she stressed.

"That was part of the discussion of our (volunteer inclusion) committee, and we felt that a really strong statement was needed," she said, referencing the seven-page equity plan, which board members did not vote on Tuesday.

Other board members including Bryan Eichfeld and John Dowling said they were unaware of how serious racial problems at Saucon Valley had become.

"I guess I was naive," Eichfeld said, adding that to hear of the bigotry hurts him personally, because he has a "beautiful" one-year-old granddaughter who is black.

Dowling said he had been under the impression that incidents of the nature described by the MacLeans and other families were on "the ash heap of history."

"I'm not sure how, but we will fix this," he promised them.

The next Saucon Valley School Board meeting will be held Tuesday, April 11 at 7 p.m. in the Audion room at Saucon Valley High School.

# EXHIBIT F

Allentown
**67°**
(http://www.wfmz.com/weather)

Silversea® Senior Cruises
More Choices Than Any Luxury Line. Best Single Fares: Get a Quote Now! Go to
silversea.com/Senior-Single-Offer

LEHIGH VALLEY (/NEWS/LEHIGH-VALLEY-1)

## Director's comment worries some Saucon Valley parents

Posted: Mar 30, 2017 06:03 PM EDT
Updated: Mar 31, 2017 09:08 PM EDT

Director's comment worries some...

A comment made by a Saucon Valley school board member at a meeting this week has parents worried even more racial tension will ensue.

The discussion during the Saucon Valley School Board meeting on March 28 was supposed to be about the district's inclusion and equity draft action plan, a way to deal with racial tension and past incidents at the high school.

"I'd like to make a response, and it's going to be somewhat different from what you've heard," board member Ed Inghrim said during the meeting. "If you can't handle this day to day bigotry, then it's your problem. It is not, in my mind, the responsibility of the government to basically introduce political correctness, to tell people what they can say and what they cannot say."

"When he took that seat, he is saying, 'I have your children's best interest at heart,'" said parent Sheila MacLean, who was at the meeting. "I am there to represent them, to be an advocate for them."

But that is not the comment that most shocked MacLean and her husband, Kerry. It was when Inghrim said, "I would suggest what you teach your kids is to hang in there and deal with it."

The comment set off 20 minutes of comments from parents, including the MacLeans.



"Just about four years, every day my children walk into the school not knowing when they are going to be called the 'n word,'" Sheila MacLean told the board.

Two days later, the MacLeans were still in disbelief.

"When a grown person could hear what, not just my children, but other children have gone through, and for your response to say, 'Just deal with it,'" said Sheila MacLean, "of course, I have to be concerned."

Kerry and Sheila MacLean sat down exclusively with 69 News on Thursday. They said the whole goal of the school board meeting was to reach a plan to help all groups affected by hate.

"We want our kids to grow up and have the opportunity to pursue a healthy life," added Kerry MacLean.

69 News spoke with Inghrim Thursday night off camera and he said his statements were not intended to be negative.



United States Drivers Born Between 1936 and 1966 are in for a big surprise

Inghrim explained there's a decade old district policy that deals with harassment.

The district defines harassment as severe, persistent, or pervasive verbal or written conduct relating to things like race and color that gets in the way of someone's education.

Inghrim said he does not see issue with the current policy that he voted for but says something might be falling through the cracks.

Perhaps, he added, it's not being enforced or needs to be updated.

Inghrim said he doesn't think racism is worse in the Saucon Valley School District than elsewhere.

But, if Tuesday's meeting showed anything, there is debate in the community about that.



ALL RIGHTS RESERVED. THIS MATERIAL MAY NOT BE PUBLISHED, BROADCAST, REWRITTEN OR REDISTRIBUTED.